Staten hour versus the receiver case numbers are consolidated 24-2016 and 24-1973 I hope all of our interns are we're planning on hearing nothing but I don't think bankruptcy's not always a primary focus. It's not always a primary focus. Law school, is it? All right, Mr. Kritzer, you've reserved two minutes for rebuttal. We'll hear from you when you're ready. Thank you, Your Honor. May it please the Court, Nate Kritzer on behalf of Appellant Richard Staten hour. More than eight years ago, the assets of several funds, including PPCO, were put into a court-ordered SEC receivership. The existing management was removed to protect investors, and a receiver was appointed. Now, after an extremely lengthy process that, unfortunately, has really consumed most of the available proceeds for distribution and professional fees and other costs, the receiver below sought to pay the remaining majority of net receivership proceeds on a priority basis to the same manager a receivership was created to replace. All three of those individuals are defendants in the pending SEC enforcement case. This result, we submit cries out for a person. Most importantly, it violates Mr. Staten hour's contract with the receiver that provided his claim to get the same treatment as the other unsecured claims against PPCO. Well, is that what it says? It does. It talks about folks that made a redemption request. Does that apply to these claimants? Your Honor, if I can pull up the exact language of these. Yeah, this is the most favored nation language we're talking about, right? So the most favored nation language at A390 of the appendix is not what applies here. Okay. So that's not our argument. The receiver has mischaracterized our argument and said that we're relying on that clause. We are not. So what the clause says, this is section two of the settlement agreement. It says that my client gets. And this is not 390 to 391, or this is? This is 390. Okay. A390, it runs through the 391. Got it. And it's in the same section. It provides that my client gets a general unsecured claim against PPCO in the amount of roughly $12.1 million, which shall be classified under the receiver's plan of distribution in the receivership case with the same priority as other general unsecured claims against PPCO. Right. So what happened here is that he just, what happened was he made a deal, a settlement, that allowed his investor claim to be converted into an unsecured creditor claim. And as part of that deal, he just said, look, I am now like all other unsecured creditors, right? Well, I would dispute that he had a, quote, unquote, investor claim. That was the underlying dispute. And it would be inappropriate to make. But it had to be resolved. It had to be resolved. And it was resolved in our favor by settlement. Well, it was resolved by settlement. The receiver agreed that we would be treated the same as all other unsecured creditors of PPCO.  But the receiver then has the right to enter, as the receiver did with Mr. Statenhower, into settlements that the receiver believes will benefit the sort of course of this process, right? So the receiver then said, in order to cut off the accrual of legal fees and these indemnification costs, I'm going to settle for, I don't know, 85 percent off or something of the original claim, right? So why is the receiver not allowed to enter into that sort of settlement when the receiver believes it's in the best interest of the project? Well, first of all, the receiver can't violate our agreement. There's no authority that says a receiver can violate one settlement agreement. Were there any other unsecured creditors in this matter besides your client and the indemnification claimants? Yes, there are. Okay, so Mr. Statenhower's unsecured creditor claim was treated the same as everyone else, all the other unsecured creditors, with the exception of this settlement agreement. Well, that is not what we agreed to. We agreed that his claim would be classified with the same priority as the other unsecured creditors of PPCO. So by that agreement? The other unsecured creditors of PPCO. By that agreement, the receiver was from that point forward prohibited from negotiating anything with any other unsecured creditor. Well, they couldn't give an unsecured creditor a priority over my client as they did here. That's not permitted under this language because then they are not, the client is not being treated the same as another unsecured creditor of PPCO. And in fact, the receiver doesn't even claim that that's what this allows. The receiver now says, well, this is separate and apart from the plan of distribution. That's their argument on this appeal. Because the settlement that the receiver entered into with Levy and Small, particularly Small, was as a result of an arbitration proceeding where, for example, Mr. Small won that arbitration proceeding in a claim of $9 million, and there were some concerns by the receiver that those claims would be prioritized and they would wipe out all the remaining funds that were there to pay all the unsecured creditors. Your Honor, with respect, that's not accurate. There was not an arbitration award in favor of Mr. Levy or any of these defendants. Not Levy, Small. Didn't Small get an arbitration, win an arbitration of $9 million? No. Your Honor, I don't believe that's accurate. These are all with respect to indemnity claims that they're asserting with respect to. The indemnity claims were $34 million, right? A total of $34 million, roughly. Somewhere in that range. I don't know the exact number. And there was some exposure here because, well, one of them was acquitted outright, the others were acquitted in part, and the receiver was concerned that there was some exposure and settled the $34 million claim for $5 million. Why is that an abuse of discretion? Again, because, first of all, it violates the settlement agreement. Am I reciting the facts correctly? The $34 million claim was settled for $5 million. The district court twice ruled that that claim was unsecured. Two times. First in 2018 and then in 2016. Was there a $34 million indemnity claim or claims that were settled for $5 million? Unsecured claim? I believe so. I think it was the actual indemnity portion, now that I go through the math. It was about 20% of what it was settled for. So the actual indemnity portion was more like $20 million. I think it was $21 or $22. There are other portions of the claim that were added on. We addressed this in our briefing. It's at A512, footnote 3. We walked through the math on that. The actual indemnity claims are settled for roughly 20% of their face value. Since you're at A212, at A201, in the receiver's explanation of the awards and why these settlements went into place, it says on July 12, 2016, Judge Honorable Theodore Katz, arbitrator, issued a partial final award. Now, I know that hasn't been finalized in the amount of $9,566,000 small arbitration award. So you're saying that's not true? This was not part of the indemnity award, Your Honor. I wasn't calling it an indemnity. There were 20, now you corrected, $21 million in indemnification claims for the people that were charged criminally and then acquitted. And then there was $9 million by small for this arbitration award. And then there was also the Black Elk Settlement Agreement, which the receiver had to contend with. Right?  I mean, all of that added up to about $34 million in potential debts that the receiver settled for a fraction. So I guess I get back to the question Judge Chin asked you. How is that an abuse of discretion? So, again, first of all, because it violates a settlement agreement. Secondly, because the Court multiple times ruled these claims were not entitled to priority, period. Except, except, and I saw your argument on that. You're relying on an endorsement the Court issued on the docket sheet. But the receiver responded to that and said that, and this is footnote one at page A402. Stagmauer also argues that this Court already has ruled against Sanfilippo's claim for priority over the unsecured claims. The Court in the March 13, 2024 claims hearing disposed of this erroneous conclusion. In its comments to David Levy's counsel, the law of the case may be a little bit squishy. And my decisions were in the context of determining whether there was an immediate right to payment, i.e., and this is my words, advanced payment. On the assumption that there was a right to payment at some point in the future. And I would give those positions appropriate weight. But I no longer hear the receiver fighting that battle. So what the Court was saying was the Court wasn't saying they were priority as a matter of under the Delaware law where indemnification agreements get priority. The Court was saying they just don't get advanced. So I don't see where the Court previously found that the Levy, Small, and Sanfilippo indemnification claims had priority. Your Honor. Did not have priority. I'm sorry. Did not have priority. If I may answer that question, please, just because I see I'm out of time, but I do want to respond to it. So we're not relying merely on a minute. We're also relying on the Court's order dated November 25, 2018. We've cited it at 2018 WL6172404. There the Court specifically ruled, quote, the former officers' rights to advancement of legal fees do not have priority over the claims of unsecured creditors. He said that they were treating their claims, quote, as if their claims were secured for administrative, which they are not. And he analyzed the Delaware law that is now being cited and concluded that it did not give them any priority over anybody else in this case. And that decision was never appealed. There was never a motion to reconsider it. I understand there were some comments about law of the case, but that does not reverse that decision or change any aspect of it. Right. But that's the order I was, the endorsement order I was talking about. You're referring to A76 or an order similar to that about they need to wait to get paid. They can't get paid in advance. That doesn't mean, I mean, I thought the receiver's concern was that under Delaware law, and that's as to the indemnification, that they may have priority over other unsecured claims. And that as to the arbitration award, that claim also would wipe out what was left in the pot. And hence the reason to settle for pennies on the dollar. I don't think anyone has ever argued that the arbitration award took priority. My client also has, well, in a different matter, got an arbitration award. So that would be then $9 million potentially off the $16 million that were left. Correct. Correct. Okay. So why wouldn't it be in the best interest? Why is it an abuse of discretion for the receiver to try to resolve that $9 million priority claim to maximize the amount of money left in the pot for all the rest of the unsecured claims, including your client? Because there is no basis under Delaware law to elevate that claim. There's been no case cited that even suggests that's correct. That argument was rejected in the court's prior order. And secondly, because if you do the math, the amount these claims are getting is multiples of what unsecured creditors can even hope to get. Within PPCO, there might be $2 million left after these amounts are paid for $44 million of claims. So it's not a good deal for people like my client. They're going to be paid less because of this. The court already ruled that these folks are not in part entitled to priority. They're getting the lion's share of the money, even though they're the defendants in this case, which is contrary to all prior law. And we submit it was an abuse of discretion and also on a minimum and error of law under the settlement agreement, which is itself an abuse of discretion. So I see I'm out of time. I will. Thank you, counsel. You'll have another couple of minutes on rebuttal. We'll hear from Mr. Feldman. Good morning, Your Honors. May it please the court. My name is Peter Feldman. I'm a member of the firm of Otterberg PC, counsel to the court-appointed receiver, Melanie Siganowski. As a preliminary matter, I'm going to focus on the issues that were raised in the last argument by Mr. Kritzer. But just as a preliminary matter, it should be clear that Judge Kogan has been the presiding judge over this receivership since around 2018 and is familiar, intimately familiar, with the facts and circumstances of this particular receivership. Ms. Siganowski has been the receiver since 2017 and has been obviously very much involved in all the matters that have come before the court and those that she was able to arrange with the creditors and investors. We believe, Your Honor, that the, Your Honors, excuse me, that the settlement that's before the, on the appeal, the settlements, are governed on a standard of fair and reasonableness. And as Mr. Kritzer noted, the standard, we think, for all issues is an abuse of discretion standard. And based upon the evidence before the court below, the court was including, I should point out, the uncontroverted declarations of the receiver in support of both of these, or all of these settlements, both orders. The court below found that the settlements are fair and reasonable and beneficial to the receivership estate, and I don't think there could be any way to gainsay that. As the court below found, and as the courts, the judges here this morning were questioning, there's a substantial reduction in these claims. The total amount of the claims at issue on these three settlements that are being appealed is almost $35 million. Of that amount, $22 million, about two-thirds, was arguably, potentially deemed to be priority claims. Now, there's no question that the receiver was fighting that. We were fighting that since these issues first were raised in 2018, and then again in 2020, and then in 21. Yes, I'm sorry. Why would the $22 million be arguably a priority claim? The claimants argued that they had priority over other parties in the receivership. Based on what? Yes, I'm sorry. Several issues. First, Mr. Sanfilippo, his law firm, the Ford O'Brien firm of the creditors in this particular instance, argued that under 8 Delaware 145C, he was entitled mandatorily to be paid 100 cents of all indemnification claims that he had. His argument was that, and I can find the site to it momentarily. His argument was that, I'm looking for the site. It's at A324, Your Honor. His argument was that it would be that the law of Delaware requires the payment in full of indemnification. It's a mandatory requirement of Delaware law. So the receiver didn't necessarily agree, but that was a disputed issue. That is correct, Your Honor. And the other two, Levy, which is also bound with its law firm, Wilson Sansini, argued that under the operating agreements, and Mr. Small similarly made similar arguments, they also had the operating agreements of the underlying platinum entities that were receivership entities, that they had priority over creditors and or investors. And, yes, the receiver fought all these issues and fought it quite well over the years. However, the court did not necessarily, Your Honor, reference the a little bit squishy line in the hearing of March 13, 2024, in the transcript. And that certainly was before the receiver when she entered into these settlements. It was clear to the run-up of the hearing on these objections to the receiver's determination to deny these or disallow these claims in full and not on a priority basis. It was clear that the court did not take the same position. In connection with, there was a series of letters that were written to the court, to Judge Kogan, in anticipation of the March 13, 2024 hearing in which certain claimants requested that the priority issue be heard first. Now, that's not in the record, Your Honor. That's not in the appendix. It's ECF 700. And in response, Judge Kogan could have said, I'm not going to hear the priority argument because I've already ruled on it. I ruled on it twice, once in the order that Mr. Crutzen mentioned, which is the November 25, 2018 order, which is A132. But that would, by the way, Judge Kahn, absolutely correct. That deals with advancement, and that's one reason I believe why Judge Kogan referred to the loss of peace. So you're talking about this order you're talking about is the one entered on January 22, 2020, which is at A76 of the record. And that's the minimum. Where Sanfilippo and Levy, after their acquittal, they want advance payment on these indemnifications. And the court said, look, line up with the other unsecured creditors because the court will not permit them to jump in line in front of other deserving creditors. Among other purposes, the receivership was instated in order to conduct, quote, conduct an orderly wind-down, including a responsible liquidation of assets, an orderly and fair distribution of those assets to investors. The receiver thus has broad authority to reasonably distribute funds by order of claim priority. Yes, Your Honor. So is your claim that, and the court seems to allude to this later, when I said that, I was talking about you're not getting the money in advance until the receiver kind of figures out what the priorities are here. That's correct, Your Honor, and that's precisely the point. And in this minute order of March 12th, 2024, where the court could have said, priorities have already been resolved, which is what the appellant asserts had occurred, the court instead says, I'm going to decide the priority issue, and he bifurcates it here. He says, I'm going to hear the priority issue after I determine the claim amount and validity. The priority issue was not off the table. It was squarely on the table, and that's clear from the court. In the minute order of March 12th, 2024, and the courts where he concludes he's going to hear the priority question, he didn't take the position that it was not on the table. It was not before the court. And secondly, the comment at the hearing itself where the judge, where Judge Kogan refers to this little bit squishy. So I think one of the issues that I should also just focus on is the language of the settlement agreement. Under no circumstances do these settlements that the receiver entered into, and which the court approved below, under no circumstances do they in any way interfere with, violate, or somehow breach Mr. Stadnauer, the appellant's agreement. It's really a function of the pages that were referred to previously, A390 and A391. In paragraph 2 of the agreement on A390, it's clear that what Mr. Stadnauer agreed to was that his claim would be treated, would be classified in the same manner as all other unsecured creditors within a plan of reorganization. Now, that actually is reiterated on the next page, on A391, where about six lines down, after the defined term allowed claims is identified, it specifically says about Mr. Stadnauer's claim that all distributions in the receivership case, on account of those claims, will be subject to the terms and conditions of a plan of reorganization. And is that settlement agreement that Mr. Stadnauer entered into, because initially the receiver disallowed his entire claim of the $12 million investment plus interest? Originally, I think it was over. $17 million, yes. It was $17 million, and the receiver disallowed it in its entirety, and then he entered into this settlement to have that considered as a non-secured claim, correct? Yes, Your Honor. That's correct. And so the settlements here were outside of a plan. The receiver certainly had the authority to reach that agreement, but to do so, she needed to get court authority, which she did. And we believe that the court below made the right decision. This is saving the estate a substantial amount of money to the extent that these claims are either found to be in their full amounts and that the priority portions are found to exist, in which event, as the judge below noted, it could exhaust or certainly deplete substantially more than we have here, the amounts available for distributions to unsecured creditors in a plan like Mr. Kritzer's claim. In addition to the amounts that could potentially be considered to have priority over all the other unsecured claims, would that also involve the costs in litigation? I mean, this appeal is costing money, presumably, from the whatever's left, correct? Yes, Your Honor. We have the paradigm of the melting ice cube. Every dollar we spend on administrative expenses is a dollar less to distribute, and that was precisely one of the rationales that the receiver set forth in her declaration, uncontroverted, in which the court noted that this is already substantial litigation since 2018 with these same claimants, and it threatened to continue far into the future. I see that my time is over, and actually I've gone over, and unless there are any questions, I submit that the orders below should be affirmed. Thank you, counsel. And Mr. Kritzer, you've reserved two minutes for rebuttal. Thank you. I want to start where we ended there, which is counsel just stated that these settlements were made outside the plan of distribution. So the receiver has repeatedly stated, and including even after this appeal was filed, that the plan of distributions will address, quote, all claims and interests, not just some of them, all of them. And the order, which is at docket number 554, which established the claims procedures and the procedures for settlement, specifically says that if the receiver settles a claim, and this is document 554 below at page 7, paragraph 3A, the allowed claimant interest and the respective amount in classification shall form the basis upon which distributions will be calculated in the receivership in accordance with a plan of distribution. Never was it represented in this proceeding. Never has it been stated by the receiver, and even through this appeal, the receiver continues to state that all claims of interest will be dealt with through a plan of distribution. And now the receiver is taking a completely contrary position, that the majority of net proceeds in this receivership can be given to people outside of the plan of distribution, before a plan of distribution is even filed. As soon as an order becomes effective, as soon as this order becomes effective and appealable, if it were affirmed, the dollars would be distributed. They would not be available for the plan of distribution. So that is another reason we submit, Your Honors, that this is completely out of bounds and inconsistent with the receivership process and everything the receivership has represented to us that will happen in this case. I also want to address briefly counsel's very brief argument about the potential priority. There's nothing in 8 Delaware 145C that supports this argument. It's a legally meritless argument. There was never an argument for priority that had a shred of legal merit. It was rejected below. There's no basis for it. Priorities in receivership cannot be based on arbitrary factors. The argument has to have some real legal meat to it. It simply does not. Unless, Your Honor, unless the court has further questions, I will rest. All right. Thank you, counsel. Thank you both. We will reserve decision.